**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| EMILIO J. URENA, *as assignee of* *Gregory S. Bryant*, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| NATIONWIDE INSURANCE COMPANY OF AMERICA, | ) ) ) |
| Defendant. | ) ) ) |

No. 2:13-cv-03544-DCN

**ORDER**

This matter is before the court following a bench trial held on July 20, 2015. Based on the evidence presented and heard on that date, the court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52.

## I. FINDINGS OF FACT

1. On January 22, 2012, a car driven by Gregory Bryant ("Bryant") struck a car driven by plaintiff Emilio J. Urena ("Urena") in Moncks Corner, S.C. Urena sustained severe injuries as a result of the accident and was airlifted to the hospital.

2. At the time of the accident, Bryant was an insured under an insurance policy issued by defendant Nationwide Insurance Company of America ("Nationwide"). The policy provided liability coverage in the amounts of $25,000 per person for bodily injury and $25,000 for property damage. Following the accident, Urena filed a claim with Nationwide.

3. The claim was initially assigned to Nationwide claims adjustor Destiny Goodrum ("Goodrum"). In her notes, Goodrum indicated that Urena was hospitalized with severe injuries. On January 27, 2012, Goodrum received a letter of representation

1

from Urena's counsel and the bodily injury claim was transferred to adjustor Tina Ramsey ("Ramsey") of Nationwide's attorney negotiation team. Upon being assigned the claim, Ramsey reviewed Goodrum's notes in the claim file. Ramsey sent a letter to Bryant the day the case was assigned to her, informing him that there was a potential for personal exposure.

4.      After the claim was assigned to her, Ramsey began to investigate the claim. Ramsey made a note in the claim file on February 7, 2012 indicating that

> [b]ased on the fact that liability is clear, [insured driver] apparently travelling at an excessively high rate of speed and dui, our limits, both [property damage] and [bodily injury] coverage, will be exhausted. Fotos of both vehicle show significant damage. [Insured vehicle] flipped over and [claimant vehicle's] rear end is completely missing.

Pl.'s Ex. 7. Ramsey indicated at trial that, as of February 7, 2012, she knew that liability was clear and that the policy limits would be exhausted. Dwayne Singleton ("Singleton"), Ramsey's supervisor, sent an email to Ramsey the same day stating that he agreed that "this [is] likely a limits case and can be settled once the package is in." Pl.'s Ex. 5.

5.      In a February 15, 2012 note, Ramsey indicated that she was waiting for Urena's counsel to email her photos so that she could evaluate the bodily injury claim. Ramsey noted that "[w]hat is known is that clmt was significantly injured and hospitalized for several weeks. This is a significant punitive claim and our limits will be exhausted. Will try to call hospital and locate bill, but if unsuccessful, will move forward with the evaluation and resolution of this claim." Pl.'s Ex. 5. On the afternoon of February 15, 2012, Urena's counsel emailed Ramsey photos of Urena in the hospital and both of the vehicles involved in the accident. On February 16, 2012, Ramsey evaluated the claim at $109,000 with medical expenses of at least $59,000.

6. On February 16, 2012, Urena's counsel faxed a letter to Larry Epperly ("Epperly"), a Nationwide claims adjustor who was handling Urena's property damage claim.[1] Epperly alerted Ramsey to the letter around 3:00 p.m. the same day. The letter contained the following time-limit demand: "[I]f we have not received the settlement checks by the close of business tomorrow, or the funds are not wired directly to my trust account, I will advise my client to reject any forthcoming receipt of the policy limits as being untimely." Pl.'s Ex. 1. Epperly and Ramsey discussed the letter but did not discuss the time-limit demand.

7. Ramsey admitted that due to her own error, she did not read the paragraph containing the time demand. She also indicated that if she had read the letter more closely, she would have complied with the demand. She testified that she had previously sent a check via overnight mail to comply with a time-limit demand and that she could have sent a check via overnight mail to Urena's counsel. Moreover, Ramsey testified that Nationwide had agents in the Charleston area at that time who could have delivered a check in order to comply with the demand, although she was not sure that they were working on February 17, 2012.

8. Ramsey obtained approval to pay the bodily injury policy limits and issued a check on February 17, 2012. She mailed the check to Urena's counsel the same day and included both a covenant not to execute and Medicare addendum with the check. Because the following Monday, February 20, 2012, was a federal holiday, Urena's counsel received the check on February 21, 2012. The same day, Urena's counsel

---

[1] While the letter indicated that it had also been faxed to Ramsey, the fax number to which it was sent was not Ramsey's.

returned the check because it had not been timely received as required by his demand letter.

9.  After returning the check, Urena filed a lawsuit against Bryant in this court. On December 12, 2013, the jury returned a verdict for Urena in the amount of $1,150,000.

10.  Bryant assigned his claim against Nationwide to Urena. The court left the record open to further submissions from counsel on the issue of the assignment. Because the court has not received anything further, it assumes that the assignment to Urena was valid.

## II. CONCLUSIONS OF LAW

1.  This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1). A federal court sitting in diversity is required to apply to substantive law of the forum state. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 79 (1938). Therefore, South Carolina applies.

2.  In the seminal case of Tyger River Pine Co. v. Md. Cas. Co., the South Carolina Supreme Court held that "an insurer against liability for accidents which assumes the duty of defending a claim owes the assured the duty of settling the claim if that is the reasonable thing to do." 170 S.E. 346, 349 (S.C. 1933). The court said the following in answering whether a plaintiff is entitled to recover for negligence unaccompanied by bad faith in the negotiations:

> We think this question was decided by this court by the opinion on the appeal from the order overruling the demurrer. The opinion thus states the issue: "Does the complaint state a cause of action either in contract or in tort for breach of contract, or of bad faith or negligence [emphasis added] in the performance of contract?"

4

> The following was quoted from the case of Attleboro Mfg. Co. v. Frankfort, etc., Co. (C. C. Mass.) 171 F. 495: "Where an insurer under an employers' liability policy on being notified of an action for injuries to insured's servant assumed the defense thereof, and was negligent in conducting the suit, to the loss of the employer, the latter was entitled to sue the insurance company for breach of its implied contract to exercise reasonable care in conducting the suit or in tort for negligence."
>
> We said in our opinion in connection with this question: "The same principle is announced in the rehearing of the same case reported in [Attleboro Mfg. Co. v. Frankfort, etc., Co.] (C. C. A.) 240 F. 573. And such we find to be the prevailing opinion."

Tyger River, 170 S.E. at 348 (emphasis added). The South Carolina Supreme Court has further held that in disposing of a Tyger River claim, the factfinder "is entitled to consider negligence on the issue of unreasonable refusal to pay benefits." Nichols v. State Farm Mut. Auto. Ins. Co., 306 S.E.2d 616, 620 (S.C. 1983).

    3.    "[T]he covenant of good faith and fair dealing extends not just to the payment of a legitimate claim, but also to the manner in which it is processed. Mixson, Inc. v. Am. Loyalty Ins. Co., 562 S.E.2d 659, 662 (S.C. Ct. App. 2002). "'[I]f an insured can demonstrate bad faith or unreasonable action by the insurer in processing a claim under their mutually binding insurance contract, he can recover consequential damages in a tort action.'" Tadlock Painting Co. v. Md. Cas. Co., 473 S.E.2d 52, 53 (S.C. 1996) (quoting Nichols, 306 S.E.2d 619) (emphasis in Tadlock). "[I]f the insurance company did not specifically deny the claim", whether they are liable under Tyger River must be judged "by the evidence it had before it at the time the suit was filed." Howard v. State Farm Mut. Auto. Ins. Co., 450 S.E.2d 582, 584 (S.C. 1994).

    4.    The court finds that under the unique circumstances of this case—Ramsey received a demand letter, did not read the actual demand, and failed to send the checks to Urena's counsel in a timely manner, even though she could have and would have sent the

checks as requested if she had read the demand—Nationwide's conduct constitutes negligence in processing a claim. Nationwide breached its duty to Bryant and did not adhere to the standard of care—testified to by Urena's expert, Marvin Infinger—by failing to read the demand letter carefully and failing to process the claim in a timely manner. But for that breach, Bryant would not have been subjected to a substantial verdict over the policy limits. The damages were foreseeable, evidenced by Ramsey's testimony that she knew of the potential that Bryant could be exposed to a large judgment if Nationwide did not settle within policy limits.

5.    Nationwide's expert, Dawes Cook, testified that had Ramsey read the letter and had it in her capacity to get the check to Urena's counsel by Friday afternoon, prudence would dictate that she do it and it would be unreasonable to Bryant not to do it unless she had some reason why she could not do it. Moreover, Singleton testified that if it were possible and reasonable to meet a time demand, Ramsey would be required to do so. Ramsey testified that there was no reason she could not have paid the claim in compliance with the demand letter.

6.    The court finds it irrelevant that Ramsey included a covenant not to execute with the check she sent to Urena's counsel. The rejection letter indicates that the settlement was not accepted because it fell outside of the time-demand. Whether Nationwide would have acted reasonably in refusing to settle without a covenant not to execute—assuming their offer was timely and Urena rejected the settlement offer on that basis—is simply not before the court. Urena's demand letter made it clear that he would not accept a settlement offer after close of business on February 17, 2012 and he did not receive one by that deadline.

6

7.    The court finds that Ramsey's conduct did not rise to a reckless or conscious disregard for Bryant's rights. Therefore punitive damages are not appropriate.

### III.   CONCLUSION

Based on the foregoing, the court **FINDS AND CONCLUDES** that Nationwide is liable to Urena in the amount of $1,100,000.00—the difference between the coverage provided and the amount of the judgment entered against Bryant.

**AND IT IS SO ORDERED**.

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**July 30, 2015**
**Charleston, South Carolina**