**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| EMILIO J. URENA, *as assignee of* | ) | |
| *Gregory S. Bryant*, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:13-cv-03544-DCN |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| NATIONWIDE INSURANCE | ) | |
| COMPANY OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The following matters are before the court on: (1) defendant Nationwide Insurance Company of America's ("Nationwide") motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59, or for relief from the judgment pursuant to Federal Rule of Civil Procedure 60, ECF No. 137; (2) plaintiff Emilio J. Urena's ("Urena") motion for summary judgment, ECF No. 138; (3) Nationwide's motion to compel, ECF No. 140; (4) Nationwide's motion to strike Urena's motion for summary judgment, ECF No. 142; and (5) Urena's motion to add Gregory S. Bryant ("Bryant") as a party, ECF No. 148. For the reasons set forth below, the court denies Nationwide's motion to alter or amend, or obtain relief from the judgment, denies Urena's motion for summary judgment, denies Nationwide's motion to compel, denies Nationwide's motion to strike, and grants Urena's motion to add Bryant as a party.

## I.  BACKGROUND

On January 22, 2012, Bryant and Urena were involved in a vehicle collision in Moncks Corner, South Carolina. Urena sustained serve injuries as a result of the

crash.  At the time, Bryant was insured under an automobile liability policy issued by Nationwide.  After negotiations between Nationwide and Urena failed to resolve the matter, Urena filed a lawsuit against Bryant in this court under the caption <u>Emilio J. Urena v. Gregory S. Bryant</u>, Case No. 2:12-cv-00469 (the "underlying tort action").  The jury returned a verdict in the underlying tort action on December 12, 2013, and a judgment was entered against Bryant in the amount of $1,150,000 on December 17, 2013.

Bryant executed an instrument purporting to assign his claims against Nationwide to Urena on December 5, 2013 (the "Assignment").[1]  Urena then filed the instant action in his capacity as Bryant's assignee, claiming that Nationwide was liable for negligence and bad faith in failing to pay the policy limits under Bryant's automobile insurance policy.  Am. Compl. ¶¶ 19–21.  At a pretrial motion hearing, the parties and the court engaged in the following exchange regarding the Assignment:

> URENA'S COUNSEL:  I don't think there's any issue here about the assignment was given (sic).  Is there any issue about that?
>
> NATIONWIDE'S COUNSEL:  Not directly, Your Honor.
>
> THE COURT: What does that mean?
>
> NATIONWIDE'S COUNSEL:  That means that the assignment was obtained from Nationwide's insured before the tort trial ever took place.  That would be one of the subjects of inquiry of Mr. Driggers,[2] if we were allowed to depose him.
>
> URENA'S COUNSEL:  The reason I say that, I think Mr. Bryant is -- Mr. Bryant's in jail, we have to make arrangements to get him here, if they have a question about he signed this and gave it to us.

---

[1] Bryant later executed a second assignment to correct an error in Nationwide's name on April 16, 2014.

[2] Mr. Driggers is Urena's counsel.

> THE COURT: Well, since it's nonjury, we can always do that afterwards.

ECF No. 97, Pretrial Hr'g Tr. 9:8–22.  The topic came up again at the bench trial on July 20, 2015, where the parties discussed the possibility of entering the Assignment into evidence.  This discussion was again quite brief, and consisted of the following exchanges:

> URENA'S COUNSEL: . . . [W]e have the assignment which we'd like to put in evidence.  We talked to you about whether we have to bring the fellow from jail, or whether we could do it afterwards or whatever.  I don't know what their position is.  Are y'all agreeable to us putting in the assignment as a document in evidence?
>
> NATIONWIDE'S COUNSEL: If you have somebody here to authenticate it.
>
> THE COURT:  We'll worry about that after lunch, okay?
>
> [. . .]
>
> THE COURT:  Okay.  All right.  Did you have any loose ends y'all wanted to tie up before you rested?
>
> URENA'S COUNSEL:  We had the assignment.  I would say one thing.  The assignment was the subject of a request [] by the defendant of the plaintiff, and they said admit that Mr. Urena, through Mr. Driggers, obtained an assignment of Mr. Bryant's claims against Nationwide before the commencement of the tort trial.  We said it was irrelevant.  Subject to that objection, plaintiff did obtain an assignment from counsel for Bryant prior to trial.  So we've admitted the – they've requested us to admit the assignment, and we've admitted it.  The person who signed the assignment is in jail.  His lawyer is one of the witnesses, and he's not here.  We're trying to get him, but I don't know whether we can or not.  We'd like to be able to keep the record open, and maybe if Your Honor's satisfied that we get an affidavit authenticating that that's his signature on these assignments, there was actually two assignments, the first one they complained didn't -- said Nationwide Insurance Company.  And then we did it, redid it with Nationwide Insurance Company of America.  So there are two of them that have been signed, both of them, I think, Mr. Johnson was the witness on it, or the lawyer, and was there when it was signed.  He's the attorney who can authenticate it, but he's not here.  So however Your Honor wants to handle it.  We'd like to either keep it open or rest

3

> with the understanding that the request to admit is sufficient to show we have an assignment.
>
> THE COURT:  We'll keep it open with regard to tying up that loose end, which is something we talked about in the phone call on Friday.  I guess what was irrelevant at the time of the request to admit has now become relevant?
>
> URENA'S COUNSEL:  Well, it was irrelevant to the case, but it's relevant to them saying that we don't have an assignment, when they requested us to admit the assignment.
>
> THE COURT:  We'll leave it open.  Just let me know how you want to do it.

ECF No. 120, Bench Trial Tr. 139:11–20, 141:7–142:18.  The court then required the parties to submit proposed orders by July 27, 2015, ECF No. 106, and issued its findings of fact and conclusions of law on July 30, 2015, finding Nationwide liable in the amount of $1,100,000.00.  ECF No. 107.  Though the court left the record open during this interim period, Urena did not submit any evidence confirming the authenticity of the assignment.  Nevertheless, in its findings of fact, the court "assumed" that the assignment was valid.  ECF No. 107 at 4.

On August 26, 2015, Urena filed a motion to amend the court's findings of fact to make an unequivocal finding that Bryant assigned his claims against Nationwide to Urena, or in the alternative, to take additional testimony or allow the admission of additional evidence on the issue.  ECF No. 112.  The court denied Urena's request to amend the findings of fact, but granted his request to "open the record to receive additional testimony and other evidence relating to the assignment's validity."  ECF No. 129 at 9.

The parties subsequently deposed Bryant and his former attorney, Brian Johnson ("Johnson"), and exchanged interrogatories and requests for production.  A

4

number of Nationwide's discovery requests sought information regarding Urena's efforts to obtain evidence of the Assignment's validity prior to trial and during the time the record was left open for such evidence immediately after trial. ECF No. 140-3 at 1–6. Urena "declined" to respond to such requests, arguing they were irrelevant to the assignment's validity and sought privileged information. Id.

On May 20, 2016, Nationwide filed the instant motion to alter or amend the court's January 22, 2016 order opening the record, and to obtain relief from the court's July 30, 2015 judgment. ECF No. 137. On June 1, 2016, Urena filed its response to Nationwide's motion, as well as its own motion for summary judgment on the issue of the Assignment's validity.[3] ECF No. 138, 139. On June 7, 2016, Nationwide filed a motion to compel responses to its discovery requests regarding Urena's efforts to obtain evidence of the Assignment's validity at the time of trial. ECF No. 140. On June 13, 2016, Nationwide filed a motion to strike Urena's motion for summary judgment, ECF No. 142, as well as a reply in support of its motion to alter or amend, or obtain relief from the judgment. ECF No. 143. On June 20, 2016, Nationwide filed a response in opposition to Urena's motion for summary judgment. ECF No. 145. On June 24, 2016, Urena filed a motion to add Bryant as a plaintiff in this action, ECF No. 148, as well as a response to the motion to compel. ECF No. 147. On June 29, 2016, Urena filed a reply in support of its motion for summary judgment. ECF No. 150. On July 5, 2016, Nationwide filed separate replies in support of its motion to strike and its motion to compel. ECF Nos. 151, 152. On July

_____

[3] Though each was filed under a separate ECF Number, Urena's response to Nationwide's motion to alter or amend judgment, ECF No. 139, and its motion for summary judgment, ECF No. 138-1, are the same document.

11, 2016, Nationwide filed a response to Urena's motion to add Bryant as a party,

ECF No. 153, and on July 21, 2016, Urena filed a reply.  ECF No. 154.  The court

held a hearing on August 2, 2016.  The matter is now ripe for the court's review.

## II.  STANDARD

### A.    Motion to Alter or Amend Judgment

While Rule 59(e) does not specify a standard under which a district court may

alter or amend a judgment, the Fourth Circuit has recognized that a court may grant a

Rule 59(e) motion "only in very narrow circumstances:  (1) to accommodate an

intervening change in controlling law, (2) to account for new evidence not available

at trial, or (3) to correct a clear error of law or prevent manifest injustice."  Hill v.

Braxton, 277 F.3d 701, 708 (4th Cir. 2002).  Rule 59(e) provides an "extraordinary

remedy that should be used sparingly."  Pac. Ins. Co., 148 F.3d at 403 (internal

citation omitted); Wright v. Conley, No. 10-cv-2444, 2013 WL 314749, at *1 (D.S.C.

Jan. 28, 2013).  Rule 59(e) motions may not be used to make arguments that could

have been made before the judgment was entered.  See Pac. Ins. Co. v. Am. Nat'l Fire

Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998).  Moreover, "[a] party's mere

disagreement with the court's ruling does not warrant a Rule 59(e) motion, and such a

motion should not be used to rehash arguments previously presented or to submit

evidence which should have been previously submitted."  Sams v. Heritage Transp.,

Inc., No. 2:12-cv-0462, 2013 WL 4441949, at *1 (D.S.C. August 15, 2013).  Whether

to alter or amend a judgment under Rule 59(e) is within the sound discretion of the

district court. See, e.g., Bogart v. Chapell, 396 F.3d 548, 555 (4th Cir. 2005).

**B.    Motion for Relief from Judgment**

Rule 60(b) of the Federal Rules of Civil Procedure states:

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1)  mistake, inadvertence, surprise, or excusable neglect;

(2)  newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3)  fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4)  the judgment is void;

(5)  the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6)  any other reason that justifies relief.

Rule 60(b)(4) allows a district court to vacate an otherwise final order only if "the judgment is void."  "An order is 'void' for purposes of Rule 60(b)(4) only if the court rendering the decision lacked personal or subject matter jurisdiction or acted in a manner inconsistent with the due process of law."  Wendt v. Leonard, 431 F.3d 410, 412 (4th Cir. 2005).  While this statement sounds rather broad, the Fourth Circuit "narrowly construe[s] the concept of a 'void' order under Rule 60(b)(4)" precisely because of the threat to finality of judgments.  Id.  A judgment will be rendered void only in the rare instance that a court has "clearly usurp[ed]" its legitimate power to exercise jurisdiction.  In re Bulldog Trucking, Inc., 147 F.3d 347, 352 (4th Cir. 1998). Rule 60(b)(6) allows a district court to relieve a party from a final judgment "for any other reason that justifies relief."  "While this catchall reason includes few textual

limitations, its context requires that it may be invoked in only 'extraordinary circumstances' when the reason for relief from judgment does not fall within the list of enumerated reasons given in Rule 60(b) (1)-(5)." <u>Aikens v. Ingram</u>, 652 F.3d 496, 501 (4th Cir. 2011) (en banc).

### C.     Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Rule 56(c) of the Federal Rules of Civil Procedure requires that the district court enter judgment against a party who, 'after adequate time for discovery . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" <u>Stone v. Liberty Mut. Ins. Co.</u>, 105 F.3d 188, 190 (4th Cir. 1997) (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986)). Any reasonable inferences are to be drawn in favor of the nonmoving party. <u>See</u> <u>Webster v. U.S. Dep't of Agric.</u>, 685 F.3d 411, 421 (4th Cir. 2012). However, to defeat summary judgment, the nonmoving party must identify an error of law or a genuine issue of disputed material fact. <u>See</u> Fed. R. Civ. P. 56(a); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986); <u>see also</u> <u>Bouchat v. Balt. Ravens Football Club, Inc.</u>, 346 F.3d 514, 522 (4th Cir. 2003).

Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence. <u>See</u> <u>Anderson</u>, 477 U.S. at 252; <u>Stone</u>, 105 F.3d

at 191.  Rather, "a party opposing a properly supported motion for summary judgment . . . must 'set forth specific facts showing that there is a genuine issue for trial.'"  Bouchat, 346 F.3d at 522 (quoting Fed. R. Civ. P. 56(e) (2002) (amended 2010)).  If the adverse party fails to provide evidence establishing that the factfinder could reasonably decide in his favor, then summary judgment shall be entered "regardless of '[a]ny proof or evidentiary requirements imposed by the substantive law.'"  Id. (quoting Anderson, 477 U.S. at 248).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  When the party moving for summary judgment does not bear the ultimate burden of persuasion at trial, it may discharge its burden by demonstrating to the court that there is an absence of evidence to support the non-moving party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  The non-movant must then "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322.

### D.     Motion to Compel Discovery

The Federal Rules of Civil Procedure provide that a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."  Fed. R. Civ. P. 26(b)(1).  In evaluating whether a matter is relevant and proportional, the court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the

discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Id.

If a party declines to answer an interrogatory or request for production, the serving party "may move for an order compelling an answer, designation, production, or inspection."  Fed. R. Civ. P. 37(a)(3)(B).  An evasive or incomplete disclosure, answer, or response, "must be treated as a failure to disclose, answer or respond."  Fed. R. Civ. P. 37(a)(4).  "The scope and conduct of discovery are within the sound discretion of the district court."  Columbus–Am. Discovery Grp. v. Atl. Mut. Ins. Co., 56 F.3d 556, 568 n.16 (4th Cir. 1995) (citing Erdmann v. Preferred Research, Inc. of Georgia, 852 F.2d 788, 792 (4th Cir. 1988)).

### E.     Motion to Add a Party

Under Rule 21, the court may add a party at any time on motion by a party or on its own.  Fed. R. Civ. P. 21.

> In deciding whether to drop parties, add parties, or retain parties under Federal Rule of Civil Procedure 21, courts ordinarily consider basic principles such as fundamental fairness and judicial economy, whether an order under Federal Rule of Civil Procedure 21 would prejudice any party or would result in undue delay, and the threats of duplicitous litigation and inconsistent jury verdicts.

John S. Clark Co. v. Travelers Indem. Co. of Illinois, 359 F. Supp. 2d 429, 440 (M.D.N.C. 2004).  Whether to add or dismiss a party under Rule 21 is committed to the court's sound discretion.  Gilbert v. Gen. Elec. Co., 347 F. Supp. 1058, 1059 (E.D. Va. 1972).

# III.  DISCUSSION

The court must now decide five separate motions arising out of the court's January 22, 2016 decision to allow additional discovery on the issue of the Assignment's validity ("January 2016 Order").  Nationwide's general argument is that Urena had an opportunity to present evidence of the Assignment's validity at trial and simply failed to do so, depriving this court of jurisdiction and rendering all orders in the case void.  Alternatively, Nationwide posits that the Assignment was void ab initio for public policy reasons, which leads to the same result.  Urena contends that the only issue that remains in this case is the Assignment's validity, and while Urena's previous attempts to prove that issue may have been relevant to the court's decision to reopen the record in its January 2016 Order, they are not relevant to the actual issue that was reopened for additional discovery.   Urena further contends that additional discovery has established the Assignment's validity, and he is therefore entitled to summary judgment.

With these broad themes in mind, the court addresses each of the motions in turn.

## A.    Nationwide's Motion to Alter or Amend Judgment or for Relief from Judgment

Nationwide seeks to vacate the court's July 30, 2015 judgment pursuant to either Rule 59(e) or Rule 60.[4]  ECF No. 137 at 1–6.  Nationwide offers two grounds

---

[4] The court first notes that Nationwide's motion is clearly untimely under Rule 59.  Federal Rule of Civil Procedure 59(e) provides that a motion to alter or amend a judgment "must be filed no later than 28 days after the entry of the judgment."  This is not a flexible requirement.  Rule 6(b)(2) provides that "[a] court must not extend the time to act under Rules 50(b) and (d), 52(b), 59(b), (d), and (e), and 60(b)."  Fed. R. Civ. P. 6.  Nationwide filed the instant motion on May 22, 2016, nearly ten months after the judgment Nationwide and four months after the court's January 2016 Order.

for such relief, arguing that:  (1) Urena failed to prove the validity of the Assignment at trial, and (2) subsequent discovery has revealed that Urena misled the court in suggesting that the witnesses who could have authenticated the Assignment at trial were unavailable.  Id.  Urena argues that he failed to present evidence of the Assignment at trial because the court provided its assurance that he would be able to present such evidence after the trial.  Id. at 2 n.2.

Nationwide's first argument was already addressed in the January 2016 Order. Though the court's findings of fact never actually determined whether Urena met his burden to prove the existence of the Assignment at trial, the court has previously explained that it

> [cannot] simply change its ultimate finding of liability on [this] basis, because it also never found that [Urena] failed to carry [his] burden.  [] Instead, the court regards its previous 'assumption' as a non-finding, [] making it necessary to look back to the record to determine the assignment's validity.

ECF No. 129 at 9.  After reviewing the relevant portions of the record, the court determined that it was appropriate to allow further discovery on the Assignment issue.  Id.  The court based its decision, in part, on the fact that Nationwide utterly failed to raise this argument at trial.  Id. at 8 (declining to "punish plaintiff for failing to address an issue that was never truly contested").  The most Nationwide ever did was indicate its desire to question Bryant's counsel about the fact that "the assignment was obtained from Nationwide's insured before the tort trial ever took place." Pretrial Hr'g Tr. 9:13–16.  The court indicated that this could be done after the bench trial, id. at 19–22, but then moved swiftly to resolve the case on July 30, 2015,

---

Thus, Nationwide's motion is only timely under Rule 60(b), which requires a motion to be filed in "a reasonable time."  Fed. R. Civ. P. 60(c)(1).

a mere 10 days after the trial's conclusion. ECF No. 107. Under these circumstances, the court found that it would "manifestly unjust" to punish Urena for failing to prove the Assignment's validity at trial.

Nationwide protests that the court has improperly relieved Urena of the burden of proving his case. ECF No. 137 at 3. The court has done no such thing. The court has simply determined that Urena should be given an opportunity to meet that burden. Certainly, the court is not enamored with Nationwide's apparent litigation strategy of seizing upon deficiencies in the trial record <u>after</u> the trial's conclusion, but this was not the sole reason for reopening the record. Rather, the court was convinced that, "under the circumstances," relief under Rule 59(a) was appropriate. ECF No. 129 at 9. To the extent these "circumstances" require clarification, the court first notes that it provided its assurance that the issue could be dealt with after trial. When the court proceeded to issue its findings of fact shortly after trial, it appears the Assignment issue slipped through the cracks.[5] Nationwide's failure to address the Assignment is relevant, inasmuch as Nationwide could have quite easily have brought this issue to the court's attention in July of 2015, but chose

_____

[5] It is true that Urena could have brought this issue to the court's attention, but the court does not find this to be a decisive consideration. Urena at least addressed the Assignment in its proposed findings of fact and conclusions of law, attempting to rely on his own interrogatory answer to show that Bryant's claims were assigned to Urena. ECF No. 130 ¶ 21. While the court had already declined Urena's request to use this admission as the basis for a finding on the issue, Bench Trial Tr. 142:7–18 ("URENA'S COUNSEL: So however Your Honor wants to handle it. We'd like to either keep it open or rest with the understanding that the request to admit is sufficient to show we have an assignment. THE COURT: We'll keep it open with regard to tying up that loose end ."), this discussion was quite brief and it is possible that Urena did not realize that the court regarded the admission to be insufficient. When viewed in the broader context of this case, Urena's failure to re-raise the Assignment issue after the conclusion of the bench trial is not enough to dissuade the court from finding that it would be manifestly unjust to render a decision based on the trial record.

to remain silent.  See ECF No. 129-1, Nationwide's Proposed Findings of Fact and Conclusions of law (providing no indication that the Assignment was invalid).  For these reasons, the court stands by its conclusion that it would be "manifestly unjust" to render a decision based on the trial record.

Nationwide next argues that Urena misrepresented certain crucial facts that the court relied on in deciding to reopen the record in its January 2016 Order.  ECF No. 137 at 4–6.  Specifically, Nationwide points to deposition testimony from Bryant and Johnson indicating that they were never contacted about testifying at trial.  See ECF No. 137-1, Bryant Depo. 20:9–13 (stating that he does not remember receiving a subpoena to testify in the underlying tort action); ECF No. 137-2, Johnson Depo. 50:2–21 (same).  Based on this testimony, Nationwide contends that Urena misrepresented the reason for his failure to establish the Assignment's validity at trial.

There are two problems with this argument.  First, as explained above, the court's decision to reopen the record was not based on a finding that Bryant and Johnson were unavailable.  ECF No. 129.  Second, there was no reason to have expected Urena to make Bryant or Johnson available at trial because the court had already provided its assurance that the Assignment issue could be dealt with after trial.  Pretrial Hr'g Tr. 9:17–23 ("URENA'S COUNSEL: . . . Mr. Bryant's in jail, we have to make arrangements to get him here, if they have a question about [whether] he signed this and gave it to us.  THE COURT: Well, since it's nonjury, we can always do that afterwards.").  Thus, the court finds Bryant and Johnson's availability irrelevant.

Therefore, the court finds no grounds to alter, amend, or grant Nationwide relief from the judgment.

**B.     Motion for Summary Judgment and Motion to Strike**

In his motion for summary judgment, Urena argues that Johnson and Bryant's depositions conclusively show that Bryant knowingly signed the Assignment, and therefore, there is no genuine dispute of material fact as to the Assignment's validity. ECF No. 138-1 at 3.  Nationwide first argues that Urena's motion for summary judgment is untimely.  ECF No. 145 at 3.  Alternatively, Nationwide contends that the court should declare the Assignment void as against public policy,[6] or at least, allow Nationwide to conduct further discovery into the Assignment's validity.  Id. at 4–11.

Nationwide argues that Urena's motion is untimely pursuant to the court's March 24, 2015 scheduling order which required dispositive motions to be filed "on or before June 15, 2015."  ECF No. 84.  Nationwide stresses that "Rule 16 was drafted to prevent parties from disregarding the agreed-upon course of litigation," Dilmar Oil Co. v. Federated Mut. Ins. Co., 986 F. Supp. 959, 980 (D.S.C.), aff'd sub nom. 129 F.3d 116 (4th Cir. 1997).  Of course, the scheduling order did not contemplate the current posture of the case.  When the court reopened the record in its January 2016 Order, it fully expected the parties to conduct additional discovery and hoped that this discovery would somehow resolve the Assignment issue.  Though the court did not specify the means of accomplishing this goal, it obviously intended to allow the parties to present the results of their additional discovery.  Therefore, the court finds that Urena's motion for summary judgment is not untimely.

---

[6] Nationwide makes this request pursuant to Rule 56(f), which empowers a district court to grant summary judgment in favor of a non-movant.

Urena contends that he is entitled to summary judgment because post-trial discovery has established the Assignment's validity. ECF No. 138 at 2. Urena highlights certain evidence showing that Bryant signed the Assignment knowingly and voluntarily. Johnson Depo. 19:7–14, 23:7–24:4, 30:7–32:7 (confirming Johnson's signature to the first and second versions of the Assignment); Bryant Depo. 9:25–10:19, 14:6–15:11 (confirming Bryant's signatures to the first and second versions of the Assignment and his understanding of the purposes of the Assignment). Nationwide does not dispute this point, but argues that this does not resolve all issues affecting the Assignment's validity because it does not resolve whether the Assignment is void as against public policy or somehow collusive.

Urena's evidence goes to the authenticity of Bryant's signatures, which is only part of the validity analysis. Urena's belief that the authenticity of Bryant's signature resolves this case is understandable. Nationwide indicated at trial that it had no objection to entering the Assignment into evidence so long as it could be authenticated. Bench Trial Tr. 139:16–19. However, Nationwide also indicated at the pretrial hearing that it wished to depose Urena's attorney about the fact that "the assignment was obtained from Nationwide's insured before the tort trial ever took place." Pretrial Hr'g Tr. 9:13–15. More importantly, the court's January 2016 Order did not limit its decision to reopen the record to the issue of the Assignment's "authenticity." The court reopened the record to receive additional evidence on the Assignment's "validity," based on its determination that all aspects of the Assignment had received too little attention at trial. ECF No. 129 at 7–9. Notably, the court rejected Urena's invitation to resolve the matter on the basis of a previous affidavit

confirming Bryant's signature, ECF No. 112, and stated that it was necessary to "fully develop the facts before applying the correct legal standard." Id. at 8–10. This language makes clear that the January 2016 Order reopened the record on all issues regarding the Assignment's validity, not just the authenticity of Bryant and Johnson's signatures. Thus, the court finds that Urena is not entitled to summary judgment because the evidence does not resolve all issues affecting the Assignment's validity— namely, whether the Assignment was collusive, or otherwise void as against public policy.

While the foregoing analysis is sufficient to resolve Urena's motion for summary judgment, Nationwide asks the court to go a step further and declare the Assignment is void as against public policy. ECF No. 145 at 4–7. Nationwide argues that the Assignment is void because it was signed on December 5, 2013, five days before trial in the underlying tort action even began. Id. Nationwide claims that "South Carolina courts have not addressed [this] issue," but urges the court to hold that an insured cannot assign a claim against its insurer until a judgment is secured against the insured. Nationwide argues that such assignments contravene public policy because they remove the insured's incentive to litigate the issue of his or her liability, and cites cases from other states that have adopted this position. Id. at 5.[7]

The court finds that Nationwide is incorrect in its assessment of South Carolina law. It is unnecessary to evaluate the benefits of Nationwide's proposed rule

---

[7] Here, the second version of the Assignment contains a covenant by Urena not to "enforce or collect on the judgment [in the underlying tort action] until after he has exhausted his efforts to recover the judgment from [Nationwide]." ECF No. 138-5 at 12 (showing final version of the Assignment). Notably, the first version of the Assignment—the only one signed before the judgment was entered in the underlying tort action, did not contain such language.

or the support that rule finds in other jurisdictions because South Carolina has already rejected it. In <u>Fowler v. Hunter</u>, the Supreme Court of South Carolina addressed a settlement agreement which assigned an insured tortfeasor's professional negligence claim against its insurance agent to the plaintiffs in the underlying tort action before that action was tried. 697 S.E.2d 531 (S.C. 2010). The court explained that "South Carolina law require[s] the careful scrutiny of settlement agreements to avoid the potential for complicity or wrongdoing,"[8] and specifically recognized that "the primary concern in [] cases with the same procedural posture as the instant matter is the risk of collusion when an insured is protected from liability by an agreement not to execute prior to the entry of judgment in the underlying tort action." <u>Id.</u> at 535. The court went on to analyze the settlement agreement in question, and found "no evidence of collusion." <u>Id.</u> In conducting this analysis, the court pointed out that "the parties did not stipulate as to the [underlying tort plaintiffs'] damages . . . to reduce the appearance of collusion and the parties believed the [underlying tort action] would be tried to a conclusion." <u>Id.</u> The <u>per se</u> rule that Nationwide advocates is obviously inconsistent with the "careful," fact-specific scrutiny required under <u>Fowler</u>.

 If Nationwide wishes to advance an argument that the Assignment is collusive, it may do so, but collusion cannot be determined solely from the fact that the Assignment was made before trial in the underlying tort action. Nationwide argues that there is some evidence of collusion. In its response, Nationwide

---

[8] Technically, this language comes from the Supreme Court of South Carolina's description of the Court of Appeals' holding. However, the Supreme Court clearly endorsed the Court of Appeals' analysis. <u>See Fowler</u>, 697 S.E.2d at 535 (stating that "the court of appeals correctly recognized that South Carolina courts favor settlement and determined that there was no collusion involved in the settlement" and concluding that "the court of appeals' reasoning [was] sound").

highlights Bryant's testimony that the purpose of the Assignment was "to try to get [Urena] whatever he needed." ECF No. 145-2, Bryant Dep. at 15:5–11. While this statement could be taken in a number of ways, the court agrees that it could be reasonably interpreted to indicate some form of collusion. However, there is also evidence that the Assignment was not collusive. For instance, the Assignment in this case, like the assignment in Fowler, did not stipulate an amount of damages. ECF No. 112-2. Moreover, the first version of the Assignment—the only version signed before the judgment was entered in the underlying tort action—did not contain a covenant not to execute that judgment against Bryant. Id. On the current record, there is simply not enough evidence to warrant summary judgment for either party.

Finally, Nationwide asks for leave to conduct further discovery regarding the Assignment's validity. Specifically, Nationwide asks the court to: (1) compel Urena to respond to its Second Requests to Admit and Third Requests for Production, and (2) depose Urena's counsel, Johnny F. Driggers ("Driggers"), and his staff about their involvement in procuring the Assignment. ECF No. 145 at 9–13. Nationwide's first request is duplicative of its motion to compel and will be dealt with below in part III.C. As for Nationwide's request to depose Driggers and his staff, the court will allow Nationwide to notice such depositions, but will not forecast its decision on any discovery dispute that may arise from such efforts. Urena argues that Nationwide already had an opportunity to inquire into the circumstances surrounding the execution of the Assignment when it deposed Bryant and Johnson. ECF No. 2–3. However, this does not foreclose the possibility that Driggers, or his staff, might

provide different information.  Thus, the court will not prevent Nationwide from attempting to obtain such information.[9]

C.    **Motion to Compel**

Nationwide's motion to compel seeks discovery of certain information pertaining to Johnson and Bryant's availability to testify at trial.  After the court's January 2016 Order reopened the record for purposes of determining the Assignment's validity, Nationwide served Urena with its Second Requests to Admit, which contain a number of interrogatories regarding Urena's efforts to make Johnson or Bryant available to testify.  ECF No. 140-2.  Urena denied most of these interrogatories, subject to objections that they were irrelevant.  Id.  Nationwide then served Urena with its Third Requests for Production, which sought any and all documents supporting Urena's denials of the interrogatories posed in the Second Requests to Admit.  ECF No 140-3.  Urena declined to respond to these requests for production on the ground that the information they sought was irrelevant and privileged.[10]  Id.

It is well established that information is relevant and discoverable if it relates to "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).  Nationwide argues that Urena's efforts to obtain Johnson

---

[9] Apart from the requested depositions, the court will not allow any further discovery on the Assignment issue.  The court asks that the parties file proposed scheduling orders—or reach some agreement—detailing the manner in which this issue should be resolved.

[10] The response to Nationwide's Third Requests for Productions does not specify which privilege is being invoked.  The court disregards this deficiency because it agrees that Urena's efforts to make Johnson or Bryant available for trial are irrelevant.

and Bryant's testimony are relevant simply because the court relied on Urena's representations of their unavailability in reaching its decision to reopen the record in this case.  ECF No. 140-1 at 4–5.  Meanwhile, Urena contends that his previous efforts to prove the Assignment's validity do not have any impact on whether the Assignment was in fact valid.  ECF No. 147 at 4.

As explained above, the court sees no reason Urena should have been expected to make Bryant or Johnson available at trial, given that the court assured the parties at the pretrial hearing that the Assignment issue could be dealt with after trial. Pretrial Hr'g Tr. 9:17–23 ("URENA'S COUNSEL: . . . Mr. Bryant's in jail, we have to make arrangements to get him here, if they have a question about [whether] he signed this and gave it to us.  THE COURT: Well, since it's nonjury, we can always do that afterwards.").  The court has already determined that Bryant and Johnson's availability to testify at trial is irrelevant to its decision to reopen the record.  This information is even less relevant to whether the Assignment was actually valid.  An instrument's validity is ordinarily established at the time it is executed.  Cf. Dean v. Dean, 93 S.E.2d 206, 209 (S.C. 1956) ("The question as to whether those who have signed are bound is generally to be determined by the intention and understanding of the parties at the time of the execution of the instrument.").  Perhaps there are circumstances when a party's subsequent conduct may invalidate an assignment, but Nationwide has not even attempted to identify such circumstances or explain how they would apply to the requests at issue.

Because Nationwide has failed to demonstrate how Urena's efforts to make Johnson and Bryant available at trial are relevant, its motion to compel must be denied.

### D.    Motion to Add Party

Finally, Urena moves pursuant to Rule 21 to add Bryant as a plaintiff in this action.  Urena contends that Bryant's addition is appropriate because Nationwide is attempting to implement a litigation strategy based on inconsistent positions—(1) that Urena lacks standing because the Assignment is invalid, while simultaneously asserting (2) that Bryant was not harmed by Nationwide's actions because the Assignment contained a covenant not to execute the underlying tort judgment against him.  ECF No. 148-1 at 1–2.  Urena also argues that adding Bryant to this action would promote judicial economy.  ECF No. 154 at 2.  Nationwide argues that Urena's request is inconsistent with its position in this action because Urena and Bryant cannot both have standing.  ECF No. 153 at 6–8.  Nationwide also argues that it would be prejudiced if the court were to add Bryant as a party.  Id. at 3–6.

The court first addresses Nationwide's argument that Urena and Bryant cannot both have standing.  This may be true, but the court finds that it does not prohibit it from adding Bryant as a party.  The core of Nationwide's objection appears to be that adding Bryant would require the court to exercise its jurisdiction in an action where it was certain that one of the plaintiffs lacked standing.  There is no dispute that this court lacks jurisdiction to hear a claim brought by a party without standing.  Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992) ("[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III.").

22

At the same time, it is equally well established that "a federal court has jurisdiction to inquire into its own jurisdiction." Dracos v. Hellenic Lines, Ltd., 762 F.2d 348, 350 (4th Cir. 1985). This is essentially what Urena asks the court to do here. While Urena and Bryant cannot both have standing, the court has no way of determining which of the two is the real party-in-interest without determining the validity of the Assignment. As explained above, the validity of the Assignment is the only issue remaining in this action. Thus, the entire action has become an exercise in determining whether the court has jurisdiction. Adding Bryant as a party does not change this; it simply ensures that when the Assignment issue is resolved, the court will be able to retain jurisdiction to resolve the action.

Perhaps Nationwide is troubled by the implications of allowing a party to join an action and benefit from proceedings that, in retrospect, the court never had jurisdiction to hear. This situation would arise if Bryant is added as a plaintiff, and it is later determined that the Assignment was invalid. However, this "retroactive" jurisdiction problem has not troubled federal courts in other situations. Though a court's jurisdiction is ordinarily determined as of the time the action was commenced, this rule "is not absolute but is subject to exceptions based upon countervailing policy concerns of efficiency, finality and fairness." Hager v. Gibson, 108 F.3d 35, 41 (4th Cir. 1997). "One such exception is found in Rule 21 of the Federal Rules of Civil Procedure, permitting the court, on motion or sua sponte, to order that a party be "dropped or added . . . at any stage of the action and on such terms as are just." In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig., 510 F. Supp. 2d 299, 306 (S.D.N.Y. 2007) (emphasis added). Indeed, Rule 21 has been used to cure

jurisdictional defects <u>after</u> the judgment.  <u>Grupo Dataflux v. Atlas Glob. Grp., L.P.</u>, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered.'" (quoting <u>Newman–Green, Inc. v. Alfonzo–Larrain</u>, 490 U.S. 826, 832 (1989))).  As the Fourth Circuit has explained

> [w]hen a court acts without jurisdiction, the extent of the transgression is the same whether the act involves ruling on a legal question, presiding over an evidentiary hearing, or receiving a verdict from a jury. [] The defect is the same in any of these situations, and so is the propriety of rescuing jurisdiction.

<u>C.L. Ritter Lumber Co. v. Consolidation Coal Co.</u>, 283 F.3d 226, 230 (4th Cir. 2002).

Concededly, Rule 21 is generally used to cure jurisdictional defects by dropping parties that destroy jurisdiction.  <u>C.f.</u> <u>Newman-Green</u>, 490 U.S. at 832 (recognizing "well-setttled" rule allowing courts to drop dispensable nondiverse parties in diversity actions).  Here, Urena seeks to add a party.  Thus, it might be argued that cases where a court has dropped a party to cure a jurisdictional defect are distinguishable from the instant case.  But the Fourth Circuit rejected a similar argument in <u>C.L. Ritter Lumber</u>, 283 F.3d 226.  There, the Fourth Circuit affirmed the district court's decision allowing the plaintiffs to amend the judgment to split a nondiverse action into two separate actions that, when viewed independently, met the requirements of complete diversity.  <u>Id.</u> at 230.  The defendants attempted to limit "cases like <u>Newman-Green</u>, in which the judgment was amended by the mere dismissal of a party," to their facts, and argued that such cases "[could not] support the more extensive remedy employed [by the district court]."  <u>Id.</u>  The court disagreed, explaining that:

> Here, as in <u>Newman–Green</u>, the remedy applied by the court was authorized by the Federal Rules of Civil Procedure. And here, as in <u>Newman–Green</u>, this remedy resulted in a trial unit over which the court could validly exercise jurisdiction. The specific nature of the remedy implicates the discretion of the court, not its power to act.

<u>Id.</u>  The same circumstances apply in this case.  Federal Rule of Civil Procedure 21 specifically authorizes the court to "add . . . a party" "at any time, on just terms." Adding Bryant would allow this court to guarantee its jurisdiction over the case after the Assignment issue is resolved.  While this may be a doctrinally curious result, the parties should take comfort in Judge Posner's oft-repeated observation that "law is an instrument of governance rather than a hymn to intellectual beauty, some consideration must be given to practicalities."  <u>Newman-Green</u>, 490 U.S. at 837 (quoting <u>Newman-Green, Inc. v. Alfonzo-Larrain R.</u>, 854 F.2d 916, 925 (7th Cir. 1988) (Posner, J.)).

Of course, the fact that adding Bryant is jurisdictionally permissible does not answer whether it is actually appropriate under Rule 21.  In deciding whether to add or drop a party under Rule 21, the court must weigh concerns of "fundamental fairness[,] judicial economy, . . . prejudice[,] . . . undue delay, and the threats of duplicitous litigation and inconsistent jury verdicts."  <u>John S. Clark Co.</u>, 359 F. Supp. 2d at 440.  Here, if the court does not add Bryant as a party, the risk of inconsistent verdicts is somewhat mitigated because if Nationwide ultimately proves that the Assignment was invalid, the verdict in this case will not stand.  However, there is certainly a risk of duplicative adjudications,[11] undue delay, and waste of judicial

---

[11] In fact, following the briefing of this motion, Bryant filed an action in this court alleging that Nationwide was negligent in handling his claim and in failing to settle the underlying tort action.  <u>See</u> <u>Gregory S. Bryant v. Nationwide Ins. Co. of America</u>, Case No. 2:16-cv-3843-DCN.

resources.  The court is currently in a position to determine which of the two possible plaintiffs has the right to bring these claims by simply resolving the Assignment issue in this action.  To require Bryant to effectively re-litigate all of the other issues in this case, when it is possible to salvage the court's jurisdiction in this action, is undoubtedly a wasteful exercise.

Nationwide contends that such re-litigation is necessary to protect it from prejudice.  ECF No. 153 at 5–6.  However, Nationwide does not adequately explain how it would be prejudiced.  Nationwide obviously had an opportunity to defend, but that defense turned out to be inadequate.  ECF No. 107.  Nationwide suggests that its defense may have been different had the action been brought by Bryant, rather than Urena, because "[it] would have been entitled to serve Mr. Bryant with interrogatories, requests to produce, and requests for admission—all of which may be served only on parties to a lawsuit."  ECF No. 153 at 6.  Nationwide fails to explain what information it could have obtained through "interrogatories, requests to produce, and requests for admission" that could not have been obtained through other avenues of discovery—namely, depositions or document subpoenas.  See Fed. R. Civ. P. 30 ("A party may, by oral questions, depose any person . . . ."); Fed. R. Civ. P. 31 ("A party may, by written questions, depose any person . . . ."); Fed. R. Civ. P. 45 (authorizing parties to issue subpoenas to "produce documents, electronically stored information, or tangible things or to permit the inspection of premises").  The court sees no reason why these methods were inadequate the first time around, and thus, fails to see how Nationwide was prejudiced by having to litigate against Urena, rather than Bryant.

Nationwide also argues that had Bryant been the plaintiff, it could have deposed Driggers about Urena's "24-hour demand letter, [the] circumstances surrounding his offer, and the other grounds set forth in its motion to disqualify." ECF No. 153 at 6. Again, the court fails to see why this is the case. Nationwide attempted to depose Driggers about these issues in May of 2015. ECF No. 87-1. Urena filed a motion to quash Nationwide's subpoena, which the court granted at a pretrial hearing on July 1, 2015. ECF No. 95. While the grounds for the court's ruling were somewhat unclear,[12] there was never any suggestion that Driggers's status as an attorney in the action had any bearing on the matter. In his motion to quash, his response to Nationwide's motion to disqualify, and at the pretrial hearing, Urena consistently argued that Driggers's testimony was simply not relevant to any issue in the case. ECF No. 87 at 2 ("Plaintiff respectfully submits that it is an unnecessary burden for Mr. Driggers [] to appear at a deposition when they have no relevant testimony to offer."); ECF No. 69 at 6 (arguing that the issues Nationwide seeks to depose Mr. Driggers on "are not relevant or material. . . . The focus of this litigation needs to be on the actions of the Nationwide personnel handling this claim"); Pretrial

---

[12] At the hearing the court ruled that it would quash the subpoena "right now," but apparently left open the possibility that it would allow Driggers to be deposed. Pretrial Hr'g Tr. 12:21–22 ("I'm going to grant your motion to quash, especially with Miss Rowe; maybe Mr. Driggers."). The court recognized that if it relied on certain cases from outside of South Carolina, Driggers would need to be deposed. Id. at 13:2–3. However, because the court could not answer the question under South Carolina law, it asked Nationwide to file a motion to certify the question to the Supreme Court of South Carolina, which Nationwide never did. Id. at 13:11–12 ("[G]ive me your motion to certify first part of next week, then we can go from there."). Whether the court ultimately accepted Urena's argument that Driggers's testimony was irrelevant under South Carolina law, or simply declined to revisit the issue after Nationwide failed to file a motion to certify, is unclear. But neither option is helpful to Nationwide's argument here—either the court already ruled against Nationwide on this issue, or Nationwide abandoned its pursuit of the issue.

Hr'g Tr. 4:6–7 ("We don't see where Mr. Driggers [] adds anything to this case."). Thus, there is no reason to believe that Nationwide would have been able to depose Driggers had the action been brought by Bryant, instead of Urena.

Finally, the court finds that considerations of fundamental fairness also weigh in favor of Bryant's addition. Again, Nationwide has had a full and fair opportunity to defend against the claims in this case. It would be inequitable to allow Nationwide to obtain a second bite at the apple by latching onto an easily curable jurisdictional defect. The court prefers that cases be decided on their merits and has no desire to encourage parties to engage in jurisdictional ambush or sandbagging. Adding Bryant as a party allows the court to ensure that its jurisdictional inquiry will identify the real party-in-interest without the risk of having to dismiss the entire action, needlessly wasting over three years of litigation.

Therefore, the court will add Bryant as a plaintiff in this action.

## IV.  CONLCUSION

For the foregoing reasons, the court **DENIES** Nationwide's motion to amend or correct, or obtain relief from the judgment, **DENIES** Urena's motion for summary judgment and grants Nationwide leave to conduct further discovery on the issue of the Assignment's validity, **DENIES** Nationwide's motion to strike, **DENIES** Nationwide's motion to compel, and **GRANTS** Urena's motion to add Bryant as a plaintiff.  The court directs the parties to file proposed scheduling orders outlining how this issue should be resolved by March 15, 2017.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**February 24, 2017**
**Charleston, South Carolina**